UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OLD REPUBLIC INSURANCE COMPANY,

         Plaintiff,

      v.                                       Case No. 23-cv-2728-JPG

IDEAL AVIATION ILLINOIS, LLC; PARKS
AVIATION HOLDINGS, LLC; and COLIN
FOPPE,

         Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on the cross-motions for summary judgment in this action seeking a declaratory judgment over the coverage of two insurance policies plaintiff Old Republic Insurance Company ("Old Republic") issued to defendants Ideal Aviation Illinois, LLC and Parks Aviation Holdings, LLC (collectively "Ideal/Parks"). Ideal/Parks has defaulted, leaving only defendant Colin Foppe, the injured party in the underlying tort action, to argue for policy coverage. Old Republic has moved for summary judgment (Doc. 44), and Foppe has responded (Doc. 46). Foppe has also moved for summary judgment (Doc. 45), Old Republic has responded (Docs. 47 & 48), and Foppe has replied (Doc. 49).

## I.    Background

This case arose after Foppe was struck and injured by the propeller of an aircraft owned and maintained by Ideal/Parks that it had rented to Brett Whitcomb for a flight with Foppe. When the aircraft would not start, Foppe began inspecting the aircraft, and the propeller suddenly started spinning and struck his head. Old Republic had issued two insurance policies to Ideal/Parks: the Aviation Policy and the Airport Policy. In this suit, Old Republic seeks a declaration that it owes no duty to defend or indemnify Ideal/Parks under either policy with

respect to an underlying tort lawsuit by Foppe.  Alternatively, it argues that its liability is limited under the Aviation Policy.  Foppe concedes that Old Republic has no duty to defend or indemnify under the Airport Policy but maintains that there is coverage under the Aviation Policy.

The Court finds that Old Republic owes a duty to defend Ideal/Parks under the Aviation Policy despite its arguably late notice.  However, further questions of liability limits and the duty to indemnify are not ripe for decision since Ideal/Parks has not yet incurred any liability.

## II.      Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  In this declaratory judgment action where there are cross-motions for summary judgment, the parties agree on the material facts and the relevant law, but they disagree about how the law applies to the facts.

## III.     Facts

The parties essentially agree to the following relevant facts for the purposes of this motion.[1]

### A.      The Incident

Ideal/Parks owned and maintained a 2004 Piper Seminole aircraft (the "aircraft") it kept at the St. Louis Downtown Airport ("CPS Airport") in Cahokia Heights, Illinois.  It was in the

---

[1] Foppe asks the Court to strike Old Republic's motion for summary judgment because it does not comply with SDIL-LR 56.1(a) with respect to stating material facts.  In fact, it does not comply.  However, the Court declines to strike an entire brief because of a mistake of form where there is no real dispute as to the material facts.  Even if the Court were to disregard Old Republic's factual allegations, the facts for the purpose of this motion would remain the same.

business of renting this aircraft and maintained two insurance policies from Old Republic covering the relevant time period. The first was an Aviation Policy, which covered the aircraft against liability; the second was an Airport Policy, which covered Ideal/Parks's fixed base operations at the CPS Airport against liability. The Court will discuss the policies in more detail later.

On July 5, 2021, Ideal/Parks rented the aircraft to Whitcomb so he could complete a check ride while being observed by Foppe, a flight instructor. The aircraft would not start through the standard ignition process, using a jump-start cable, or using a prop-start.[2] It appeared that the battery would not hold a charge. Whitcomb and Foppe called off the flight, turned everything in the aircraft off, and began the process of taking the aircraft back to the hangar.

While Whitcomb went to get a tow bar, Foppe went to the front of the aircraft in preparation for pushing it back to the hangar. While there, he attempted to visually inspect the aircraft to see if he could determine why it would not start. Foppe approached one of the engines and slightly placed his hand on the propeller to position it to get out of the way of his preferred contact point to push the aircraft back to the hangar. The propeller suddenly jerked and struck him in the head, which caused him to fall to the ground. He suffered serious injuries, including traumatic brain injury ("TBI"), and other losses. As a consequence of his TBI, the Federal Aviation Administration revoked his eligibility for airman medical certification.

Foppe informed Ideal/Parks of the incident the day it happened, July 5, 2021. More than

---

[2] "Prop-starting" means manually pulling the propeller to start it spinning. *See* Dave Hirschman, *Clear Prop! How to safely hand-prop and airplane*, Aircraft Owner and Pilots Assoc. (Feb. 25, 2020), https://www.aopa.org/news-and-media/all-news/2020/march/flight-training-magazine/ol-hand-propping (visited Oct. 1, 2024); Foppe's Mot. Summ. J. Ex. 2, Foppe Dep. 37:14-22 (Doc. 44-2 at 10).

ten months later, on May 24, 2022, Ideal/Parks first notified Old Republic in writing of the incident.  Nevertheless, Old Republic has all the witness statements and other evidence necessary to make its coverage determination despite the late notice.

        B.    <u>Aviation Policy</u>

The Aviation Policy provides liability coverage for amounts Ideal/Parks becomes liable to pay because of bodily injury suffered by anyone, including passengers, caused by an occurrence and arising out of the ownership, maintenance, or use of the aircraft.  Aviation Policy, Insuring Agreements, § I Liability Coverages, Coverage D (Doc. 12-2 at 54); Aviation Policy, Declarations, Item 4D. (Doc. 12-2 at 4) (clarifying that passengers are included).  It states the policy limits like this:

```
                                         LIMITS  OF  LIABILITY
                                         --------------------------

  ITEM 4. LIABILITY COVERAGES           EACH PERSON EACH OCCURRENCE
  D. SINGLE LIMIT BODILY INJURY,INCLUDING
     PASSENGERS, AND PROPERTY DAMAGE;                  $  1,000,000  $
     PASSENGER LIABILITY LIMITED TO:     $  100,000        ****
```

Aviation Policy, Declarations, Item 4D (Doc. 12-2 at 4).  The Aviation Policy defines a passenger as "any person in, on, or boarding the aircraft for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including pilot(s) or crew member(s)."  Aviation Policy, Definitions (Doc. 12-2 at 60).  The Aviation Policy also requires Ideal/Parks to give Old Republic written notice a soon as practicable after an occurrence. Aviation Policy, Conditions, Applicable to Coverages A, B, C and D (Bodily Injury And Property Damage) (Doc. 12-2 at 60).

        C.    <u>The Litigation</u>

On July 3, 2023, Foppe filed a tort suit in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois against Ideal/Parks.  *See Foppe v. Ideal Aviation Illinois LLC*

4

*and Parks Aviation Holdings, LLC*, No. 23 LA 0778.  He alleges that Ideal/Parks was negligent in its duties to ensure the aircraft was airworthy and properly maintained, including by conducting inspection of the battery and electrical system, before allowing it to be used by students.  Failing that, Foppe asserts Ideal/Parks had a duty to remove the defective aircraft from service and supply an airworthy aircraft instead.

In the instant case, filed in August 2023, Old Republic seeks a declaratory judgment that neither the Aviation Policy (Count I) nor the Airport Policy (Counts II and IV) covers liability from Foppe's claims for personal injury in the underlying lawsuit.  It further claims that if there is coverage under the Aviation Policy, its liability is limited to the "per passenger" coverage amount (Count III).  Ideal/Parks was served with process but did not respond and has since been defaulted.  Old Republic's motion for summary judgment relies on three principal arguments: (1) Ideal/Parks failed to give the written notice required by both policies to be given "as soon as practicable," (2) the Airport Policy excludes coverage for damage arising out of an aircraft rented by Ideal/Parks to someone else; and (3) if the Aviation Policy provides coverage, it is limited to $100,000 because Foppe was a "passenger."

In his motion for summary judgment Foppe seeks a declaration of coverage only under the Aviation Policy, not the Airport Policy.  In fact, he concedes that Old Republic has no duty to defend or indemnity Ideal/Parks under the Airport Policy.  Consequently, the Court will grant summary judgment for Old Republic on Count IV and will find Count II moot.

As for the Aviation Policy, however, Foppe contends that Ideal/Parks's late notice to Old Republic was reasonable in light of the ambiguity and complexity of the notice provision and the lack of prejudice, so it should not negate coverage.  He also argues that he was not a "passenger," so the $100,000 liability cap does not apply.

IV.     **Discussion**

A.     <u>Applicable Law</u>

Under Illinois law, which all parties agree applies to this action, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false or fraudulent. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). The duty to defend is broader than the duty to indemnify. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). Therefore, if there is no duty to defend, there is necessarily no duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993); *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).[3]

To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the complaint to the relevant provisions of the insurance policy. *Gen. Agents*, 838 N.E.2d at 1098. If any theory of recovery in the underlying complaint potentially falls within the insurance coverage, the insurer will have a duty to defend. *Id.* In comparing the policy and the underlying complaint, the Court must give the documents a liberal construction in favor of the insured. *Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157, 1160 (Ill. App. Ct. 2007); *Nat'l Union Fire Ins. Co of Pittsburgh v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042 (Ill. 1994).

---

[3] The Seventh Circuit Court of Appeals recognized an exception to this general rule where there was no duty to defend because there was no underlying lawsuit filed. Where the duty to defend is determined on the basis of whether there is an underlying lawsuit rather than whether the allegations of an underlying complaint are potentially within the insurance policy's coverage, this general rule does not hold true. *Sokol & Co. v. Atlantic Mut. Ins. Co.*, 430 F.3d 417, 421 (7th Cir. 2005). However, there is an underlying lawsuit in this case, so the traditional rule articulated in *Crum & Forster* holds true.

Under Illinois law, interpretation of an insurance policy, even an ambiguous policy, is a matter of law. *Crum & Forster*, 620 N.E.2d at 1077; *River v. Com. Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "[T]he court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs.*, 860 N.E.2d 280, 286 (Ill. 2006). If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms. *Valley Forge*, 860 N.E.2d at 314. On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy. *Id.*

Generally, the insured bears the burden of proving the claim is covered under a policy's grant of coverage, and the insurer bears the burden of proving an exclusion or limitation applies. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009); *Travelers Pers. Ins. Co. v. Edwards*, 48 N.E.3d 298, 303 (Ill. App. Ct. 2016).

    B.   <u>Notice Requirement</u>

Old Republic seeks to wipe out any obligation to defend or indemnify Ideal/Parks under the Aviation Policy in one fell swoop by enforcing the notice requirement:

> **1.    NOTICE OF OCCURRENCE.** When an occurrence takes place written notice shall be given by or on behalf of the lnsured [Ideal/Parks] to the Company [Old Republic] at their nearest office as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

Aviation Policy, Conditions, Applicable to Coverages A, B, C and D (Bodily Injury And Property Damage) (Doc. 12-2 at 60).

7

"Insurance policy notice provisions impose valid prerequisites to insurance coverage." *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 293 (Ill. 2010). A notice requirement "affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *Barrington Consol. High Sch. v. Am. Ins. Co.*, 319 N.E.2d 25, 27 (Ill. 1974); *accord State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017); *Kerr v. Ill. Cent. R. Co.*, 670 N.E.2d 759, 767 (Ill. App. Ct. 1996). An insured's breach of a notice provision will absolve the insurer of any obligation to defend or indemnify. *Yorkville Nat'l Bank*, 939 N.E.2d at 293; *Brumit Servs.*, 877 F.3d at 357.

The Illinois Supreme Court has held that where an insurance policy requires notice "as soon as practicable," it means notice must be given "within a reasonable time," which will depend on the facts and circumstances of each case. *Yorkville Nat'l Bank*, 939 N.E.2d at 293. (citing *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006)). *Yorkville National Bank* provides a non-exhaustive list of facts and circumstances that the Court may consider in determining whether notice was given within a reasonable time: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Yorkville Nat'l Bank*, 939 F.3d at 293-94; *accord Brumit Servs.*, 877 F.3d at 358. "Where the facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law." *Kerr*, 670 N.E.2d at 766.

All parties agree that written notice was not provided to Old Republic until more than 10 months after Foppe's injury. Because the Aviation Policy required written notice to be given "as soon as practicable," the relevant question is whether that notice was given "within a reasonable

time."  The Court considers each of the *Yorkville National Bank* factors in turn, then asks whether there are any other relevant circumstances.

> 1.     <u>The Language in the Notice Provision</u>

Despite Foppe's assertion that the notice provision is ambiguous, the Court finds its relevant aspects are clear and not subject to more than one reasonable understanding.  Nor is the notice provision unduly complicated.  It begins with mandatory language—"written notice *shall be* given"—that does not expressly admit an exception.  It is true that it does not require notice within a specific time period, but "as soon as practicable" leaves room for different facts and circumstances of each occurrence.  Further, Illinois court equate "as soon as practicable" with "within a reasonable time," which is a common phrase in the law that does not lead to ambiguity simply because it is not definite.

It is further clear that the notice must provide some basic information:  the identity of the insured so Old Republic knows which policy might apply; the details of the occurrence—the who, what, why, and where; the identity and address of the victim; and the identity and address of any witnesses who were available.  Where Old Republic does not decline coverage because of a defective notice—that is, one that does not contain the right or enough details—but instead declines coverage on the grounds that *no written notice was given at all*, any ambiguity in the details required in the notice is immaterial.  Similarly, where the Ideal/Parks does not claim the delay was caused by its inability to understand or diligently corral the requested details, the language in the provision does little to justify a 10-month delay.

This factor weighs in favor of finding the delay was unreasonable.

> 2.     <u>Ideal/Parks's Sophistication in Commerce and Insurance Matters</u>

It is likely that Old Republic is a very sophisticated business well-versed in insurance

negotiation and insurance law.  *See* Old Republic Insurance Group,  Old Republic Insurance Company, https://www.oldrepublicinsurancegroup.com/companies/old-republic-insurance-company (visited Oct. 3, 2024).  And while there is no evidence in the file as to the sophistication of Ideal/Parks, it is reasonable to assume it is less sophisticated than Old Republic about insurance matters simply because it does not appear it is in the insurance business. Nevertheless, nothing in the file suggests Ideal/Parks did not understand how insurance works or its obligation under the notice provision to inform Old Republic of Foppe's injury caused by a blow from Ideal/Parks's aircraft.  This factor weighs, but only slightly, in favor of Ideal/Parks's delay being reasonable.

        3.      <u>Ideal/Parks's Awareness of Foppe's Injury</u>

Foppe testified in his deposition that he spoke on the phone to Ideal/Parks's owner the afternoon of his injury and told him that he had been struck in the head at the airport.  It is reasonable to assume from this conversation that Ideal/Parks was aware of Foppe's head injury and its connection to an aircraft owned by Ideal/Parks.  Certainly this is the type of accident a reasonable aircraft owner would know might lead to a claim or a lawsuit.  Since Ideal/Parks knew of the incident, Foppe's injuries, and the potential for litigation the day of the accident, this factor weighs of finding a 10-month delay was unreasonable.

        4.      <u>Ideal/Parks's Diligence in Ascertaining Policy Coverage</u>

There is no evidence in the record regarding Ideal/Parks's diligence in ascertaining whether the Aviation Policy provided coverage.  From an objective standpoint, it is reasonable to expect the owner of the aircraft to look into insurance coverage soon after it learns that the aircraft was malfunctioning and then struck the victim.  There is no evidence in the record that Ideal/Parks made any such inquiries.  The Court notes that Ideal/Parks has defaulted in this case

without even appearing, which suggests it is not now diligently pursuing insurance coverage. This factor weighs slightly in favor of finding notice was not given within a reasonable time.

### 5.   Prejudice to Old Republic

Foppe insists that Old Republic has been provided all relevant materials and information about this case.  Thus, he argues, the purposes of a notice provision—to give the insurer an opportunity to thoroughly investigate before evidence becomes stale or is lost—had been served. Indeed, Old Republic does not point to any prejudice it has suffered because it did not learn of the incident in writing within 10 months after it happened.  For example, it does not argue that the aircraft is not in the same condition it was on July 5, 2021, when it could have made a comprehensive evaluation of Ideal/Parks's maintenance of the aircraft.  It also does not argue that it has lost an opportunity to evaluate Foppe's injuries when they were fresh so that it could later tease out health issues that may have no connection to the accident.  Old Republic makes no such arguments, so the Court must assume there are none to be made.

The lack of any prejudice weighs in favor of finding written notice was given in a reasonable time.

### 6.   Other Relevant Factors

Another factor is not argued by either party but strikes the Court as important.  While Old Republic did not receive written notice until May 2022, 10 months after the incident, it received that notice more than a year before Foppe filed his underlying lawsuit in July 2023.  Even if the freshest recollections were not available, Old Republic had more than a year to investigate and assess Foppe's claim and negotiate with him in an effort to head off a lawsuit.  This factor weighs in favor of finding the notice was within a reasonable time.

7.      Reasonableness of Ideal/Parks's Notice

In light of the specific facts and circumstances of this case, the Court finds the 10-month-late notice was given as soon as practicable, that is, within a reasonable time.  The Court acknowledges that it is not necessary to show prejudice to find a late notice unreasonable.  Prejudice is one of the many relevant facts and circumstances that go into the Court's decision whether late notice was reasonable.  However, the Court gives it great weight because it fits hand-in-glove with the purpose of the notice requirement—"afford[ing] the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence."  *Barrington Consol. High Sch. v. Am. Ins. Co.*, 319 N.E.2d 25, 27 (Ill. 1974).  Where this purpose is not defeated by late notice, the late notice is more likely to be reasonable.  Here, while most of the other *Yorkville National Bank* factors weigh against reasonableness, the Court find the lack of prejudice outweighs those other factors in the circumstances of this case.  Therefore, it finds the late notice was reasonable and was given "as soon as practicable."

The Court now turns to the question of which limitation of liability applies.

C.      Liability Limits

Since the Court has determined that Aviation Policy coverage is not negated by late notice, the parties ask the Court to determine whether Foppe was a "passenger" of the aircraft at the time he was injured.  His status would determine whether Old Republic's liability is limited to $100,000 or $1 million.

Like the question of Old Republic's duty to indemnify Ideal/Parks, which is discussed below, such a question is not ripe for decision until Ideal/Parks has incurred some liability—indeed, more than $100,000 of liability—for Foppe's injuries.  But Foppe's underlying suit has not progressed far enough to establish any liability for Ideal/Parks.

12

D.    Duty to Indemnify

As noted above, the duty to indemnify is narrower than the duty to defend.  *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010).  Therefore, if there is no duty to defend, there is necessarily no duty to indemnify.  *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).  Conversely, if there is a duty to defend, as the Court has found, there may also be a duty to indemnify.  However, where no liability has been incurred by the insured, a federal declaratory judgment regarding the duty to defend is premature.

"[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."  *California v. Texas*, 593 U.S. 659, 672 (2021).  "[T]he dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* (internal quotations omitted).

The Court of Appeals for the Seventh Circuit has consistently held that claims for declarations of an insurer's duty to indemnify an insured do not present a ripe case or controversy until the insured becomes liable.  *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("decisions about indemnity should be postponed until the underlying liability has been established"); *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit.").  That is because before liability is incurred, the decision is usually abstract, and any opinion would be advisory; it would be a waste of the Court's time if the events never come to pass.  *Lear*, 353 F.3d at 583.  In contrast, the duty to defend is real and ripe for adjudication once underlying litigation commenced.  *Id.*  Where the Court declines to declare a duty to indemnify because the insured has incurred no liability yet, it should dismiss the duty to

indemnify claims without prejudice.  *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *Zavalis*, 52 F.3d at 693.

Illinois state courts agree and have adopted the *Peppers* Doctrine, named after *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 30 (Ill. 1976).  Under that doctrine, "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured *has already incurred liability* in the underlying claim against it." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992) (emphasis added).

There is no indication any liability against the Ideal/Parks has been established in Foppe's underlying lawsuit, *Foppe v. Ideal Aviation Illinois LLC and Parks Aviation Holdings, LLC*, No. 23 LA 0778.  In fact, the public docket sheet for that case indicates it is set to be tried by a jury in June 2025.  St. Clair County, Civil Court Records, https://www.co.st-clair.il.us/ Departments/Circuit-Clerk/Courts/Civil-Records/ (visited Oct. 4, 2024).  Until there is some liability established in that case for Ideal/Parks, the Aviation Policy limits and the duty to indemnify are not ripe for decision, so this Court must dismiss those portions of this action without prejudice for lack of jurisdiction.

## V.     Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Old Republic's motion for summary judgment (Doc. 44) and Foppe's motion for summary judgment (Doc. 45);

- **GRANTS** summary judgment on part of Count I in favor of Foppe on Old Republic's claim that it has no duty to defend under the Aviation Policy because Ideal/Parks did not provide timely notice;

- **DISMISSES as moot** Count II, Old Republic's claim that the Airport Policy does not apply because Ideal/Parks did not provide timely notice, in light of the disposition of Count IV;

14

- **DISMISSES without prejudice** Count III, Old Republic's request to declare the applicable limits of liability in the Aviation Policy, and part of Count I, Old Republic's claim that it has no duty to indemnify under the Aviation Policy because Ideal/Parks did not provide timely notice;

- **GRANTS** summary judgment on Count IV in favor of Old Republic on its claim that the Airport Policy's coverage is excluded; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly, including the following declarations:

    o  The Court **DECLARES** that the timing of the notice given by defendants Ideal Aviation Illinois, LLC and Parks Aviation Holdings, LLC of the occurrence does not negate plaintiff Old Republic Insurance Company's duty under Aviation Policy No. AVC00428903 (policy period of December 12, 2020, to December 12, 2021) to defend defendants Ideal Aviation Illinois, LLC and Parks Aviation Holdings, LLC in the case of *Foppe v. Ideal Aviation Illinois LLC and Parks Aviation Holdings, LLC*, No. 23 LA 0778, Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois; and

    o  The Court **DECLARES** that, under Airport Policy No. AP1144203 (policy period of December 12, 2020, to December 12, 2021) plaintiff Old Republic Insurance Company owes no duty to defend or indemnify defendants Ideal Aviation Illinois, LLC and Parks Aviation Holdings, LLC in the case of *Foppe v. Ideal Aviation Illinois LLC and Parks Aviation Holdings, LLC*, No. 23 LA 0778, Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois.

Defaulted defendant Ideal/Parks shall be bound by these decisions and declarations.

**IT IS SO ORDERED.**
**DATED:  October 11, 2024**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
